UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
NAEEM BROWN,

                      Plaintiff,

      -against-

THE CITY OF NEW YORK, New York City
Police Department Officer ("P.O.")
EVAGELOS DIMITRAKAKIS, and P.O.
BOBBY MOHIP,

                    Defendants.

--------------------------------------------------------------x

**MEMORANDUM AND ORDER**

08-CV-5095 (FB) (MDG)

*Appearances:*
*For the Plaintiff:*
ROSE M. WEBER, ESQ.
225 Broadway, Suite 1608
New York, NY 10007

*For Defendants:*
MICHAEL A. CARDOZO, ESQ.
Corporation Counsel, City of New York
MORGAN D. KUNZ, ESQ.
Senior Counsel
Special Federal Litigation Division
100 Church Street, Room 3-189
New York, NY 10007

**BLOCK, Senior District Judge:**

        Plaintiff Naeem Brown alleges that Police Officer Evagelos Dimitrakakis, Police

Officer Bobby Mohip, and the City of New York ("the City") violated his civil rights in

connection with his arrest and prosecution for allegedly selling crack cocaine.  Plaintiff brings

the following claims under 42 U.S.C. § 1983: (1) false arrest; (2) malicious prosecution; (3)

malicious abuse of process; (4) unlawful search; (5) denial of a fair trial; (6) failure to intervene;

and (7) municipal liability.  The municipal liability claim alleges that the City has policies or

practices of arresting minorities on the pretext of drug transactions, manufacturing evidence

in drug transactions, strip-searching without reasonable suspicion, and arresting innocent

people to meet productivity goals.  He also raises a state law claim for malicious prosecution. Dimitrakakis and Mohip assert the defense of qualified immunity.

Discovery has been conducted on the claims asserted against the individual defendants, and defendants collectively move for summary judgment on these claims. Discovery on the municipal liability claim has been stayed pending the outcome of the present motions, and defendants now move to dismiss the municipal liability claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  For the reasons stated on the record at oral argument and as set forth below, the summary judgment motion is granted in part and denied in part.  The motion to dismiss is denied.

## I.

The following facts are drawn from the parties' summary judgement submissions and are uncontested unless otherwise noted.

On November 16, 2006, Officers Dimitrakakis and Mohip waited in a parked car to watch for street narcotics sales at 101st Street and Northern Boulevard in Queens.  Plaintiff was standing on this corner, talking to other people.  From here, the stories diverge.

According to defendants, Dimitrakakis saw a man, later identified as Adaberto Perez, and a woman approach plaintiff at the corner.  Dimitrakakis watched Perez hand money to plaintiff, and then saw plaintiff squat down, reach into a hole in his pants, remove a bag, and hand it to Perez.  Dimitrakakis radioed his observations to other officers.  Mohip contends that he did not see this transaction and only learned about it from Dimitrakakis. After the couple walked away, a sergeant stopped them and found crack cocaine on Perez.

2

Perez was arrested and the woman was allowed to leave.  Dimitrakakis saw her approach plaintiff, gesturing in a manner that suggested she was telling him about the arrest.  Plaintiff left, and Dimitrakakis radioed a description of plaintiff and his movements.  An unmarked police car pulled into the intersection.  Plaintiff started to run with two officers pursuing him by foot and by car.  Defendants' version of events is drawn in part from deposition testimony from Dimitrakakis, Mohip, the sergeant who arrested Perez, and the officers who pursued plaintiff.

According to plaintiff, however, he did not sell drugs or engage in any actions that could reasonably be interpreted as selling drugs.  He was just talking to two friends on the corner.  He denies speaking with the woman, and denies speaking to or conducting any transactions with Perez.  Plaintiff maintains that he did not squat and remove an item from a hole in his pants, though he admits he had a small hole in his pants.  Plaintiff insists that he did not run from the police.  Plaintiff's version of events is drawn in the main from his own declaration and deposition testimony, in which he denies engaging in the conduct described by Dimitrakakis and accuses Dimitrakakis of lying.

It is undisputed that Dimitrakakis arrested plaintiff, completed the arrest report, filed the criminal court complaint, gave statements to prosecutors, and testified before the grand jury and at pretrial hearings.  It is also undisputed that plaintiff had $20 on him at the time of his arrest, that he told an officer "I hope you don't put this junkie on me" after seeing Perez at the precinct, and that he told the police that he was in possession of marijuana.  Perez, the buyer, pled guilty to possession of a controlled substance.  Plaintiff was indicted for sale

3

and possession of a controlled substance.  Plaintiff was held in custody for 13 months until he was tried and acquitted.

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  On a summary judgment motion, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## A.    False Arrest

Defendants contend that they are entitled to summary judgment on the false arrest claim because probable cause, or at least arguable probable cause, existed for plaintiff's arrest.  They point out that it is undisputed that plaintiff was at the corner, was wearing clothing that matched Dimitrakakis's description, had $20 on him (roughly the value of the drugs found on the buyer), was arrested near where the suspected dealer fled, stated "I hope you don't put this junkie on me," and admitted marijuana possession.  Defendants thus contend that Dimitrakakis acted reasonably in reporting his observations and arresting plaintiff, even if his beliefs were mistaken.  Defendants also contend that Mohip reasonably relied on Dimitrakakis's observations since he did not personally witness the incident.

Plaintiff responds that summary judgment is inappropriate because significant factual disputes exist.  In particular, plaintiff insists that he was not selling drugs or doing anything resembling that.  He denies squatting, removing drugs from his pants, seeing Perez, speaking with a woman, or running from police.  He asserts that his clothing and actions

4

match that of the suspected drug dealer because, once Dimitrakakis decided to pin the transaction on him, Dimitrakakis falsely attributed plaintiff's description and activities to the drug dealer.

Defendants are correct in noting that "the existence of probable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). Arguable probable cause, for purposes of qualified immunity, exists if "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) (quoting *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007)).

However, "[w]here the question of whether an arresting officer had probable cause is predominantly factual in nature, as where there is a dispute as to the pertinent events, the existence *vel non* of probable cause is to be decided by the jury." *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997). Here, plaintiff denies doing the very things that would have created probable cause for his arrest. If plaintiff's version of events is credited, he was not involved in a drug transaction, and so there was no basis for Dimitrakakis to radio his description or to arrest plaintiff. Further, because Mohip was sitting next to Dimitrakakis, there is a question of fact as to whether Mohip witnessed the incident and thus had reason to believe that Dimitrakakis was lying. The Second Circuit has emphasized that "[t]he weighing of the evidence and the determination as to which version of the events to accept are matters for the jury," not for the Court on a summary judgment motion. *Weyant v. Okst*, 101 F.3d 845, 855 (2d Cir. 1996); *see also id.* ("[Plaintiff] categorically denied using any obscenities . . . . Although [defendants] gave evidence to the contrary, the district court was not entitled, on a motion for

summary judgment, to credit their version of the facts and enter judgment based on its own

view that their version was more likely true."); *Diodati v. City of Little Falls*, 04–cv–446, 2007

WL 189130, at *3 (N.D.N.Y. Jan. 22, 2007) (denying summary judgment since "the

reasonableness of [the officers'] beliefs regarding probable cause for Plaintiff's arrest depends

upon whether the Court credits Plaintiff's or Defendants' version of sharply disputed facts").

Accepting plaintiff's testimony as true, there are genuine disputes regarding the existence of

probable cause, thereby rendering summary judgment on the false arrest claim inappropriate.[1]

---

[1]At oral argument, defendants' counsel insisted that plaintiff's repeated denials are insufficient to raise a triable issue, pointing to *Williams v. City of New York*, --- F.Supp.2d ----, 2012 WL 6838934 (E.D.N.Y. 2012), in support of this proposition. The *Williams* decision, however, disavows such a proposition.

Similar to plaintiff's contentions in this case, the plaintiff in *Williams* "denie[d] ever selling or assisting anyone in selling drugs and argue[d] that the sole inference the fact-finder must draw from his denial is that the police officers lied about observing plaintiff selling drugs, falsified paperwork, and misled prosecutors." 2012 WL 6838934, at *4. The plaintiff argued that the "markedly different accounts of the events that led up to plaintiff's arrest" meant that the issue of probable cause must go to the jury. *Id.* Unlike the present case, however, the plaintiff in *Williams* was arrested pursuant to an arrest warrant after a grand jury indicted him. *See id.* at *3.

In rejecting plaintiff's argument and granting summary judgment in favor of defendants on the false arrest claim, the district court emphasized that the plaintiff's denials were insufficient to create a triable issue because he was arrested pursuant an arrest warrant. *See id.* at *4. The district court distinguished the long line of Second Circuit and district court cases, including *Weyant*, that had denied summary judgment based on competing versions of events by stating that these cases "uniformly involve arrests without warrants." *Id.* The court reasoned that "[t]hese cases are inapplicable here because plaintiff was arrested subsequent to an indictment and pursuant to an arrest warrant, which presumptively establishes probable cause for the arrest." *Id.* The district court even acknowledged that "his denials create an issue of fact as to whether he dealt drugs." *Id.* Nevertheless, the district court found that the denials "do not create a sufficient factual basis for a reasonable jury to decide the indictment and arrest warrant were procured by fraud, perjury, or the misrepresentation or falsification of evidence." *Id.*

The present case does not involve an arrest warrant, and thus there is no presumption of probable cause in the false arrest context and no heightened burden requiring plaintiff to present sufficient evidence to overcome this presumption.

**B.**     **Malicious Prosecution**

The elements of both federal and state malicious prosecution claims are (1) the commencement of a criminal proceeding, (2) the favorable termination of that proceeding, (3) lack of probable cause, and (4) malice as the motivation for commencing the proceeding. *Swartz v. Insogna*, 704 F.3d 105, 111-12 (2d Cir. 2013). The Second Circuit has made clear that probable cause defeats a claim of malicious prosecution, *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010), and that a grand jury indictment "creates a presumption of probable cause," *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). The Court finds that plaintiff has not raised a triable issue as to the third element.[2]

In this case, a grand jury indicted plaintiff for sale and possession of a controlled substance. Thus, in order to survive defendants' motion for summary judgment on the malicious prosecution claim, plaintiff must submit sufficient evidence to overcome the presumption that there was probable cause to prosecute. *See Savino*, 331 F.3d at 73. The only evidence that plaintiff has submitted to support his version of events (i.e., that Dimitrakakis lied in the complaint and to prosecutors) is plaintiff's own testimony. Although this evidence is sufficient to raise a triable issue as to the false arrest claim, it is insufficient to raise a triable issue as to the malicious prosecution claim. Unlike the false arrest claim, the malicious prosecution claim requires plaintiff to affirmatively establish the absence of probable cause,

---

Plaintiff's denials, in both his deposition and declaration, are sufficient to raise a triable issue as to whether probable cause existed for plaintiff's arrest.

[2]Because the Court finds that plaintiff has failed to establish the lack of probable cause, there is no need to consider whether he has satisfied the other three elements.

7

imposes a presumption of probable cause based on a grand jury indictment, and requires plaintiff to rebut this presumption using "evidence sufficient for a reasonable jury to find that his indictment was procured as a result of police conduct undertaken in bad faith." *Id.*  Courts have repeatedly determined that a plaintiff's own testimony is insufficient to rebut the presumption of probable cause.  *See, e.g., Simmons v. N.Y.C. Police Dep't*, 97 F. App'x 341, 343 (2d Cir. 2004) ("Although [plaintiff] testified that the arresting officer … told him that the officers would falsify evidence and manipulate line-ups in order to implicate him, this allegation is not, without more, sufficient to raise an inference that the indictment was procured by fraud or bad faith conduct.").  Because plaintiff has not pointed to any evidence (other than his own testimony) to support his allegation that Dimitrakakis lied to prosecutors, the Court grants defendants' motion for summary judgment on the malicious prosecution claim.[3]

---

[3]Plaintiff's malicious prosecution claim confronts another legal obstacle, though one that is not ultimately dispositive.  The Supreme Court recently held in *Rehberg v. Paulk*, 132 S.Ct. 1497, 1505-06 (2012), that grand jury witnesses are absolutely immune "from any § 1983 claim based on the witness' testimony."  The Supreme Court emphasized that "this rule may not be circumvented . . . by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution."  *Id.*  As a result of *Rehberg*, plaintiff cannot base his malicious prosecution claim on the theory that Dimitrakakis lied to the grand jury, nor can he use Dimitrakakis's grand jury testimony to rebut the presumption of probable cause.  (It is questionable whether this testimony would even have strengthened plaintiff's case.  Plaintiff does not contend that the testimony contains any inconsistencies or other evidence that Dimitrakakis was lying; rather, plaintiff simply contends that the grand jury testimony is another instance in which Dimitrakakis reported the same false observations.)

Though *Rehberg* severely restricts the type of malicious prosecution claim that plaintiffs can bring, *Rehberg* does not completely bar these claims.  A plaintiff may bring a malicious prosecution claim based on allegations of fabrication outside the grand jury, *see Matthews v. City of New York*, 889 F. Supp. 2d 418, 439-40 (E.D.N.Y. 2012), but he must still present supporting evidence that is sufficient to overcome the

**C.     Malicious Abuse of Process**

To prevail on a malicious abuse of process claim, plaintiff must establish that defendants "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).  An improper purpose is required, not simply an improper motive.  *See Hauser v. Bartow*, 273 N.Y. 370, 374 (1937); *Silver v. Kuehbeck*, 217 F. App'x 18, 21 (2d Cir. 2007).

Plaintiff contends that defendants abused the process by arresting him and seeking his prosecution for the collateral objective of meeting "productivity goals" (i.e., arrest quotas).  Plaintiff has not presented sufficient evidence of this.[4]  Even had he presented sufficient evidence, attempting to meet arrest quotas merely describes a possible motive.  It does not indicate that the officers used the legal process for a purpose other than "the purpose for which the law created it."  *Hauser*, 273 N.Y. at 374.

**D.     Unlawful Search**

Plaintiff was strip-searched at the precinct and contends that this search was

---

presumption of probable cause.  For example, a plaintiff may be able to rebut the presumption by pointing to discrepancies in the official documents, *see Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003), or to officers' inconsistent testimony, *see McClellan v. Smith*, 439 F.3d 137, 145-46 (2d Cir. 2006).  Plaintiff alleges that Dimitrakakis lied in the complaint and to prosecutors, and plaintiff supports this only with his own testimony.  While these allegations are sufficient to circumvent *Rehberg*, they are insufficient to overcome the presumption of probable cause created by the indictment.

[4]Plaintiff states that he has not yet obtained evidence of these quotas due to the bifurcation of discovery on the municipal liability claim.  Nevertheless, plaintiff had the opportunity to question the officers and their supervisor about quotas during their depositions but did not do so.

9

unlawful.  "The Fourth Amendment requires an individualized 'reasonable suspicion that [a misdemeanor] arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest' before she may be lawfully subjected to a strip search." *Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008) (alteration in original) (quoting *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986)).

Defendants contend that there was reasonable suspicion for the strip search. According to Dimitrakakis, the suspected drug dealer had drugs in a hole in his pants, and plaintiff had a hole in the same place.  Moreover, plaintiff told the police that he had marijuana on him.  Since the officers did not find it during the search incident to the arrest,  defendants contend that it was reasonable to infer that plaintiff had it hidden somewhere else on him.  In response, plaintiff reiterates that there is a factual dispute as to what Dimitrakis observed and that plaintiff did nothing to give defendants reason to believe that he was involved in a drug transaction.  He further indicates that the record is unclear as to whether he made his (purportedly erroneous) admission to possessing marijuana before or after he was strip-searched.

The Court agrees with plaintiff that these factual disputes preclude summary judgment on the unlawful search claim. The record is presently unclear as to whether plaintiff admitted to possessing marijuana before the search, and the parties vigorously contest whether there was probable cause to believe that plaintiff had sold drugs.

**E.**     **Right to Fair Trial**

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional

right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). The harm is the deprivation of liberty that results from the fabrication. *See Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000). Though ultimately acquitted, plaintiff spent 13 months in jail and was subjected to the stress, risks, and costs associated with a criminal trial.[5]

Because the Supreme Court held in *Rehberg v. Paulk* that grand jury witnesses are absolutely immune "from any § 1983 claim based on the witness' testimony," defendants are absolutely immune from claims based on their pretrial and grand jury testimony. 132 S.Ct. 1497, 1505-06 (2012); *see also Briscoe v. LaHue*, 460 U.S. 325, 335-36 (1983) (holding that police officers are entitled to absolute immunity based on their trial testimony). Therefore, plaintiff cannot allege that he was deprived of a fair trial on the basis of such testimony. *See Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (noting that plaintiff "cannot show causation" on his claim for deprivation of a fair trial "because the only avenue by which the testimony could reach the jury was through [the police detective's] testimony, for which he enjoys absolute immunity" (citing *Rehberg*; 132 S.Ct. at 1505; *Briscoe*, 460 U.S. at 335-36)).

Nevertheless, *Rehberg* is not a complete bar to plaintiff's fair trial claim. Plaintiff allegedly sustained harm in large part due to Dimitrakakis's false criminal complaint and false statements to prosecutors. Plaintiff's right to a fair trial claim shall proceed on this basis. *See*

---

[5]Contrary to defendants' contentions, plaintiff's fair trial claim is neither barred by his acquittal, *see Abdul-Rahman v. City of New York*, 10-cv-2778, 2012 WL 1077762, at *11 (E.D.N.Y. Mar. 30, 2012), nor by the fact that he also alleges false arrest and malicious prosecution claims, *see Ricciuti*, 124 F.3d at 130; *Nibbs v. City of New York*, 800 F. Supp. 2d 574, 575-76 (S.D.N.Y. 2011).

11

*McCaffrey v. City of New York*, 11-cv-1636, 2013 WL 494025, at *4 (S.D.N.Y. Feb. 7, 2013) (stating that, despite *Rehberg*'s holding, "a police officer's actions in suppressing exculpatory evidence and influencing witnesses may be relevant to a fair trial claim").


**F.      Failure to Intervene**

An officer who fails to intercede is liable for the preventable harm caused by the actions of another officer where he observes or has reason to know that the other officer is violating a person's constitutional rights. *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Defendants argue that all claims against defendant Mohip should be dismissed since he had no personal knowledge of the incident and reasonably relied on information from Dimitrakakis.  Plaintiff, however, points out that Mohip was sitting next to Dimitrakakis in the police vehicle, and that Dimitrakakis had instructed Mohip to watch as the incident unfolded.   *See* Dimitrakakis Dep., Ex. C, at 69 ("I said just keep an eye - I said watch these three individuals. I said it looks like, you know, something's gonna take place here,… see whatever you could see . . .  if something I miss. . . .").

The Court finds that a question of fact exists as to whether Mohip personally observed the incident, given that he was seated next to Dimitrakakis and Dimitrakakis instructed him to watch the individuals.  A reasonable jury could find that Mohip personally saw the incident, knew that Dimitrakakis was lying, and yet failed to intervene to prevent plaintiff's arrest or prosecution.  Therefore, summary judgment as to defendant Mohip is improper.

**G.      Qualified Immunity**

Officers are generally entitled to qualified immunity if "(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Weyant*, 101 F.3d at 857. "Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999).   According to plaintiff, Dimitrakakis made false statements to officers and prosecutors, and Mohip was aware but did not intercede.   Crediting these allegations, summary judgment is not proper.  *See Babi-Ali v. City of New York*, 979 F. Supp. 268, 275 (S.D.N.Y. 1997) (concluding that qualified immunity does not protect defendants who allegedly falsified records and committed perjury).

## III.

"[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (alteration in original) (internal quotation marks omitted).  Here, plaintiff raises a municipal liability claim based on the following alleged policies: (1) arresting minorities on the pretext of drug transactions; (2) manufacturing evidence in drug transactions; (3) strip-searching without reasonable suspicion; and (4) arresting innocent people to meet productivity goals.

The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  At the motion to dismiss stage, the Court

13

accepts all non-conclusory factual allegations as true and draws all reasonable inferences in plaintiff's favor. *See id.* at 678-79. Although no discovery has taken place on the municipal liability claim, plaintiff has identified seven settled cases and a statement by a police spokesperson in support of the alleged practices. The City argues that the broad allegations fail to satisfy the pleading standard.

The Court finds plaintiff's allegations sufficient to survive the motion to dismiss. The policies alleged by plaintiffs are much better defined than in the case relied on by defendants, where the plaintiff had alleged a policy of "purposely ignor[ing] violations of individuals' constitutional rights." *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 408-10 (E.D.N.Y. 2011). Further, plaintiff may reference settlement agreements as support at the motion to dismiss stage. *See Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 46 (E.D.N.Y. 2011) (denying motion to dismiss a municipal liability claim, reasoning that while citations to pending lawsuits and settlement agreements will "not suffice to overcome summary judgment . . . they do permit a plausible inference" of deliberate indifference). Defendants' motion to dismiss is denied, and plaintiff is entitled to proceed to discovery on his municipal liability claim.

## IV

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part. Summary judgment is granted as to plaintiff's claims for malicious prosecution and malicious abuse of process. Summary judgment is denied as to plaintiff's claims for false arrest, unlawful search, denial of a fair trial, and failure to intervene. Defendants' motion to dismiss the municipal liability claim is denied.

**SO ORDERED.**

_____

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 29, 2013